No. 25-13259-DD

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

MICHAEL GEILENFELD,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of Florida

# INITIAL BRIEF OF APPELLANT MICHAEL GEILENFELD

HECTOR A. DOPICO
Federal Public Defender
MICHAEL CARUSO
Assistant Federal Public Defender
Attorney for Appellant
150 West Flagler Street, Suite 1700
Miami, Florida 33130
Telephone No. (305) 533-4200

THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL CASE)

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

**UNITED STATES V. MICHAEL GEILENFELD**
**CASE NO. 25-13259-DD**

Appellant files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Becerra, Hon. Jacqueline

Caruso, Michael

Davis, Michael S.

Dopico, Hector A.

Doty, George, III

Fernandez, Bertila

Forand, Peter

Geilenfeld, Michael Karl

Gilbert, Jean-Pierre

Goodman, Hon. Jonathan

Houlihan, Raymond D'Arsey, III

Leibowitz, Hon. David S.

Levin, Albert Zachary

Matzkin, Daniel

Minor Victims

Monk, Lacee Elizabeth

O'Byrne, Hayden P.

Palomo, Eduardo Alberto

Reding Quiñones, Jason A.

Reid, Hon. Lisette M.

Sanchez, Hon. Eduardo I.

United States of America

Urban, Jessica L.

Vasquez, Ignacio

Waxman, Abbie

Williams, Dwayne

Williams, Hon. Kathleen M.

*/s/ Michael Caruso*
Michael Caruso

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Geilenfeld respectfully submits that oral argument is necessary. This appeal presents a question of first impression in this Circuit—whether unsolicited charity from third parties constitutes an incarcerated defendant's "projected earnings and other income" under 18 U.S.C. § 3664(f)(2). No decision of this Court—or, so far as counsel has found, of any court—addresses this issue. Argument would assist the Court in resolving a question that recurs whenever restitution is ordered against an indigent prisoner supported only by the generosity of others.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ........ C-1

STATEMENT REGARDING ORAL ARGUMENT ........ i

TABLE OF CONTENTS ........ ii

TABLE OF CITATIONS ........ iii

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ........ 1

STATEMENT OF THE ISSUES ........ 2

STATEMENT OF THE CASE ........ 3

Course of Proceedings and Disposition in the District Court ........ 3

Statement of Facts ........ 4

Standards of Review ........ 12

SUMMARY OF THE ARGUMENT ........ 13

ARGUMENT AND CITATIONS OF AUTHORITY ........ 16

I. Voluntary Gifts Mr. Geilenfeld Cannot Compel Are Not His Resources—For Either the Amount or the Schedule of Restitution—Under 18 U.S.C. §§ 3663(a)(1)(B)(i)(II) and 3664(f)(2) ........ 16

A. The Statutory Text Ties Every Amount- and Schedule-Setting Factor to Resources That Are the Defendant's Own ........ 16

B. *Fuentes* Addressed Concealment of Resources the Defendant Already Had Access to, Not A Prospective Gift He Cannot Compel ........ 18

C. The Record Shows a Personal Kindness, Not an Income Stream ........ 19

II. The Court Conditioned Credit of the Defendant's Only Contrary Evidence on "Unequivocal" Certainty—A Standard § 3664(e) Does Not Permit ........ 21

III. No Finding Connects the Record to $25,000 or $1,500—And the Order's Own Design Defeats Its Premise ........ 24

A. The Figures Are Estimates Without Findings ........ 24

B. The Order Contradicts Itself ........ 26

C. What the Minimum Rate Takes ........ 27

CONCLUSION ........ 28

CERTIFICATE OF COMPLIANCE .................................................... 30

CERTIFICATE OF SERVICE................................................................ 31

**TABLE OF CITATIONS**

**CASES** **PAGE(S)**

*Koon v. United States*,

518 U.S. 81 (1996) .......... 22

*Paroline v. United States*,

572 U.S. 434 (2014) .......... 12

**United States v. Fuentes*,

107 F.3d 1515 (11th Cir. 1997) .......... 10, 14, 18, 19, 22, 23, 28

*United States v. Futrell*,

209 F.3d 1286 (11th Cir. 2000) .......... 10, 24, 25

*United States v. Hairston*,

888 F.2d 1349 (11th Cir. 1989) .......... 10, 25

*United States v. Jordan*,

582 F.3d 1239 (11th Cir. 2009) .......... 12

*United States v. Keelan*,

786 F.3d 865 (11th Cir. 2015) .......... 10, 25, 26

*United States v. Logar*,

975 F.2d 958 (3d Cir. 1992) .......... 23

*United States v. Rothenberg*,

923 F.3d 1309 (11th Cir. 2019) .......... 12

**STATUTES**

18 U.S.C. § 16 ....................................................................................6, 25

18 U.S.C. § 2422(b) ..........................................................................25

18 U.S.C. § 2423......................................................................................3

18 U.S.C. § 2423(b) ......................................................................3, 6, 25

18 U.S.C. § 2423(c)......................................................................3, 6, 25

18 U.S.C. § 3231......................................................................................1

18 U.S.C. § 3613A..................................................................................27

18 U.S.C. § 3663......................................................................................4

18 U.S.C. § 3663(a)(1)(B)(i)(II) ..........................................13, 16, 28

18 U.S.C. § 3663A...............................................................................3, 6

18 U.S.C. § 3664....................................................................................17

18 U.S.C. § 3664(e) ....................................................................2, 21, 28

18 U.S.C. § 3664(f)(2)................................................................2, 16, 28

18 U.S.C. § 3742(a) ................................................................................1

28 U.S.C. § 1291......................................................................................1

**STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION**

The district court had subject-matter jurisdiction over this criminal case under 18 U.S.C. § 3231 because Mr. Geilenfeld was charged with offenses against the laws of the United States. The district court entered an amended judgment and a restitution order on September 5, 2025. (DE 180; DE 181). Mr. Geilenfeld filed a timely notice of appeal on September 18, 2025, within 14 days of the amended judgment and the ensuing restitution order. (DE 182). This Court has jurisdiction over the appeal under 28 U.S.C. § 1291, which grants the courts of appeals jurisdiction over final decisions of the district courts, and 18 U.S.C. § 3742(a), which grants jurisdiction over appeals of final sentences.

## STATEMENT OF THE ISSUES

1. Whether voluntary gifts from third parties—deposited sporadically into Mr. Geilenfeld's commissary account by two longtime friends, unsolicited and legally unenforceable—are his "projected earnings and other income" under 18 U.S.C. § 3664(f)(2).

2. Whether the district court applied an evidentiary standard that 18 U.S.C. § 3664(e) does not permit when it declined to credit the defendant's only evidence that the gifts were unreliable—the primary donor's own statement—because that statement did not "unequivocally" foreclose future payments.

3. Whether the restitution order must be vacated where no finding connects the record to either the $25,000 total or the $1,500 minimum annual rate, and where the order's own design—redirecting the donors' gifts to restitution—contradicts the projection, on which the order rests, that the gifts will continue.

## STATEMENT OF THE CASE

## COURSE OF PROCEEDINGS AND DISPOSITION IN THE DISTRICT COURT

A federal grand jury charged Mr. Geilenfeld with two types of offenses under 18 U.S.C. § 2423. (DE 56). Count 1 charged him under § 2423(b) with traveling in foreign commerce—from Miami to Haiti—for the purpose of engaging in illicit sexual conduct from May 2005 to December 2010. (DE 56). Counts 2–8 charged him under § 2423(c) with traveling in foreign commerce and engaging in illicit sexual conduct; each count alleged a specific victim and date range. (DE 56). Before opening statements, the government dismissed the count involving Minor Victim 4—Count 5 of the superseding indictment as returned—and the remaining counts were renumbered as Counts 1 through 7. (DE 189:4, 7–8).

After trial, the jury convicted Mr. Geilenfeld on all seven remaining counts. (DE 132). At sentencing, the court imposed 210 years in prison—30 years on each of Counts 1 through 7, to run consecutively. (DE 163).

Both parties and the court agreed at sentencing that mandatory restitution under 18 U.S.C. § 3663A did not apply and that restitution is

discretionary under 18 U.S.C. § 3663. (DE 163; DE 200:54–55). Because victim losses and the appropriate restitution amount were not yet ascertainable, the court deferred the restitution determination and set a hearing. (DE 163; DE 200:90).

Before the restitution hearing, the parties submitted pre-hearing briefing. (DE 175; DE 176; DE 205:3). At the close of the hearing, the court ordered $25,000 in total restitution, to be paid at a minimum rate of $1,500 per year, plus 50 percent of any wages Mr. Geilenfeld earned from UNICOR employment, apportioned among the minor victims. (DE 205:14–16). The court directed the government to submit a proposed conforming order within seven days. (DE 205:15). Later, the court entered a written restitution order. (DE 181). This timely appeal followed. (DE 182).

## STATEMENT OF FACTS

### I. MR. GEILENFELD'S FINANCIAL HISTORY AND PRE-ARREST CIRCUMSTANCES

[redacted]

[redacted]

[redacted] He obtained clothing primarily from Goodwill and food from charitable organizations. (DE 205:8). [redacted] Defense counsel represented, without contradiction, that Mr. Geilenfeld had had virtually no income going back to at least 2016. (DE 205:8).

[redacted]

## II. THE § 3663A CONCESSION

[redacted] The government objected, noting that § 3663A applies only to certain crimes categorically involving force and that § 2423(b) and (c) are not categorically crimes of violence as defined in 18 U.S.C. § 16. (DE 153:2). [redacted]

## III. THE RESTITUTION HEARING

The government's pre-hearing submission tabulated victim losses at no less than $156,000, based on trial testimony, sentencing evidence, and victim impact statements. (DE 175; DE 205:13). The court accepted

that figure as a fair estimate but acknowledged at the outset that there was "no way" the record showed Mr. Geilenfeld could pay the full amount. (DE 205:13). The operative questions at the hearing were therefore the amount of discretionary restitution and the payment schedule the court would impose.

The government's restitution theory rested on two premises: (1) that Mr. Geilenfeld's history of receiving charitable donations—spanning his decades at SJHB—showed he was "uniquely positioned" to continue receiving contributions, and (2) that using Social Security Administration actuarial tables for a man of Mr. Geilenfeld's age yielded approximately 13 years of remaining life expectancy, supporting a $3,000-per-year projection. (DE 205:5–8). On that basis, the government recommended $40,000 in restitution. (DE 205:4).

## IV. THE COMMISSARY DEPOSIT RECORD

The only concrete evidence of Mr. Geilenfeld's post-arrest financial resources was a record of deposits made to his inmate commissary account. The government's exhibit reflected approximately $3,200 in deposits over 16 months; defense counsel's review of the same information showed approximately $2,900 over 14 months. (DE 205:9–

10). Either way, the deposits averaged $190–$200 per month, or $2,280–$2,400 per year. (DE 205:9–10). The government asserted that deposits had "tick[ed] up" after conviction (DE 205:5); but the record showed payments of $200 and $250 as early as December 2024, months before conviction. (DE 205:9).

Defense counsel identified at most three deposit sources. Two-thirds of the total came from Linda Heathman—Mr. Geilenfeld's former landlord and the woman whose disabled daughter he had assisted. (DE 205:8–9). The remaining one-third came from two other individuals—a woman who had worked for Mr. Geilenfeld in Haiti and an unidentified person who made a single isolated deposit. (DE 205:8–9). Defense counsel placed the character of these payments on the record without contradiction: "[I]t is just really two friends who have continued to support him; and, primarily, Ms. Heathman." (DE 205:9).

As for future support, the defense introduced a written statement from Heathman that stated she "ha[d] no idea how long she's going to be able to continue" making deposits, that she was a 76-year-old woman responsible for an adult disabled child, and that if the money she sent did

not reach Mr. Geilenfeld she "just wouldn't send it." (DE 205:10–11; DX 1).

As for prison earnings, defense counsel's written submission showed that BOP offers UNICOR employment to only a fraction of inmates—there is a 25,000-inmate waiting list even at facilities that have UNICOR programs—and that there is roughly a 50 percent chance any given defendant is placed at a facility without a program. (DE 176; DE 205:11).

## V. THE LIFE-EXPECTANCY DISPUTE

The government calculated the restitution window based on SSA actuarial tables showing approximately 13 years of remaining life expectancy for a man of Mr. Geilenfeld's age. (DE 205:6). Defense counsel submitted a report indicating that federal inmates, unsurprisingly, experience significantly reduced life expectancy relative to the general population—approximately two years lost for every year of incarceration—and argued that the SSA tables were therefore inapplicable to an incarcerated defendant. (DE 176; DE 205:11).

The district court judge candidly acknowledged that he could not find any controlling authority on the question. (DE 205:6). Government

counsel likewise conceded there was no applicable authority: "I am not aware of any law on that point, your Honor. And, restitution tends to be fuzzy math, at least as the 11th Circuit contemplates it." (DE 205:6–7).

## VI. THE RESTITUTION ORDER

Relying on *United States v. Fuentes*, 107 F.3d 1515 (11th Cir. 1997), *United States v. Hairston*, 888 F.2d 1349 (11th Cir. 1989), *United States v. Futrell*, 209 F.3d 1286 (11th Cir. 2000), and *United States v. Keelan*, 786 F.3d 865 (11th Cir. 2015), the district court took the record "in a commonsense way" and declined to resolve the UNICOR employment issue. (DE 205:14). The court found, by a preponderance, that Mr. Geilenfeld had historically received sporadic third-party payments and that this pattern was likely to continue. (DE 205:17). The court rejected Heathman's statement as not "unequivocally" foreclosing future payments. (DE 205:17). The court also cited statements from supporters at sentencing, urging a noncustodial sentence, as evidence that third-party support would continue. (DE 205:17).

The court found total victim losses of at least $156,000—later expressed in the written order as losses of "at least $26,000 each" for the

six victims, without stated derivation—but ordered only $25,000, recognizing that Mr. Geilenfeld could not pay the full amount. (DE 205:13–15). The court set the minimum annual payment at $1,500—below the government's $3,000-per-year projection but well above the defense's nominal proposal—and required 50 percent of any UNICOR wages as an additional payment stream. (DE 205:14–16). The court described $25,000 as "the cap," which "will never be exceeded" regardless of future income. (DE 205:19–20). The court apportioned restitution equally among Minor Victims 1, 2, 3, 5, 6, and 7—approximately $4,167 per victim. (DE 181). Minor Victim 4 was excluded from the restitution order. (DE 181).

The written order departs from the oral pronouncement in one respect. Where the court orally limited the wage component to UNICOR earnings—"[i]f he works in a UNICOR job, then it is 50 percent of wages earned from that UNICOR job," and "[i]f he doesn't work in a UNICOR job, there is 50 percent of zero" (DE 205:16; accord DE 205:19)—the written order directs him to "contribute fifty percent (50%) of any wages he earns toward this obligation." (DE 181:2).

## STANDARDS OF REVIEW

The Court "review[s] *de novo* the legality of a restitution order, but review[s] for clear error the factual findings underlying that order." *United States v. Rothenberg*, 923 F.3d 1309, 1327 (11th Cir. 2019). The Court reviews the amount of the district court's restitution award only for an abuse of discretion. *Id.; see also Paroline v. United States*, 572 U.S. 434, 459 (2014) (emphasizing that "determining the proper amount of restitution" involves "the use of discretion and sound judgment" by the district court). A district court abuses its discretion if it applies the incorrect legal standard, follows improper procedures, or makes clearly erroneous findings of fact. *United States v. Jordan*, 582 F.3d 1239, 1249 (11th Cir. 2009).

## SUMMARY OF THE ARGUMENT

[redacted] The only money in this record is charity. Specifically, $190 to $200 a month that two longtime friends—primarily Linda Heathman, a 76-year-old woman caring for a disabled adult daughter—chose to deposit into Mr. Geilenfeld's inmate commissary account. (DE 205:8–11). The order treated that charity as Mr. Geilenfeld's own income; discounted the only contrary evidence because Ms. Heathman's statement was not "unequivocal"; adopted figures that no computation in the record produces; and then, by the court's own announced design, redirected the donors' money to restitution—although the only evidence on the point is that the primary donor would continue to give only if her money reached Mr. Geilenfeld.

Three independent errors require vacatur. First, as a matter of statutory text, voluntary gifts a defendant cannot compel, solicit, or enforce are not his resources for either the amount or the schedule of restitution under 18 U.S.C. §§ 3663(a)(1)(B)(i)(II) and 3664(f)(2). Every category of resource either provision makes relevant belongs to the

defendant—his assets, his earnings, his income, his obligations. A friend's discretionary generosity belongs to the friend. No court has held otherwise; the only authority invoked below was a parenthetical in *Fuentes* addressed to concealed support, not to the definition of income. (DE 205:5).

Second, the court resolved the only contested factual question under a standard the statute does not tolerate. Section 3664(e) resolves restitution disputes by a preponderance of the evidence. The court declined to credit Heathman's statement—that she did not know how long she could continue and would stop if the money did not reach him—because she did not "unequivocally" foreclose future payments. (DE 205:17). A preponderance standard does not require any witness to guarantee her own future conduct. The standard the court applied is one no defendant could ever satisfy.

Third, the numbers themselves are findings without foundation. The government called restitution "fuzzy math" (DE 205:6–7); the court called its figure "the best that the Court can do" (DE 205:14). No arithmetic on this record yields $25,000 or $1,500. And the order is internally irreconcilable. The court's order projects that the gifts will

continue while announcing to the donors that their money will be redirected to restitution (DE 205:18)—the precise condition under which the record says the giving stops. (DE 205:11).

## ARGUMENT AND CITATIONS OF AUTHORITY

### I. VOLUNTARY GIFTS MR. GEILENFELD CANNOT COMPEL ARE NOT HIS RESOURCES—FOR EITHER THE AMOUNT OR THE SCHEDULE OF RESTITUTION—UNDER 18 U.S.C. §§ 3663(a)(1)(B)(I)(II) AND 3664(f)(2).

#### A. THE STATUTORY TEXT TIES EVERY AMOUNT- AND SCHEDULE-SETTING FACTOR TO RESOURCES THAT ARE THE DEFENDANT'S OWN.

Two statutory provisions govern here. In determining whether to order restitution and the amount, § 3663(a)(1)(B)(i)(II) directs the court to consider "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." *Id.* In setting the manner and schedule of restitution payments, § 3664(f)(2) directs it to consider "(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant; including obligations to dependents." *Id.* Each category is anchored to the defendant—assets he owns or controls, earnings he will be paid, income he will receive, debts he owes. The paired terms confirm the point—"earnings" represents compensation for labor

or capital, and "other income," read together, means receipts to which the recipient has some entitlement.

A gift is categorically different. Until the moment Heathman chooses to send money, that money is hers—not an asset of Mr. Geilenfeld, not jointly controlled, not owed to him, not earned by him. Mr. Geilenfeld cannot compel a deposit, sue for one, or plan on one. An inmate's commissary account is a passive repository for whatever others elect to give. If a friend's discretionary generosity were the defendant's "projected income," every indigent prisoner with a loyal relative would have "income" in whatever amount a sentencing court predicts the relative's affection will produce—and the payment schedule would operate as a levy on the relative, a person over whom the court has no jurisdiction and against whom no offense was proved. Nothing in § 3664 contemplates conscripting the generosity of third parties.

The statute's burden allocation confirms the reading. Section 3664(e) places on the defendant "the burden of demonstrating the financial resources of the defendant." *Id.* That allocation makes sense only for resources the defendant possesses and can document. A defendant cannot carry a burden of proving the future charitable

intentions of a third party—as this case proves. Here, Mr. Geilenfeld produced the donor's own statement of her intentions, and the court set it aside as insufficiently certain. (DE 205:17). A statute cannot sensibly be read to assign a party the burden of proving another person's future state of mind.

### B. *FUENTES* ADDRESSED CONCEALMENT OF RESOURCES THE DEFENDANT ALREADY HAD ACCESS TO, NOT A PROSPECTIVE GIFT HE CANNOT COMPEL.

The district court seemingly drew the contrary rule from a parenthetical in *United States v. Fuentes*, 107 F.3d 1515 (11th Cir. 1997), which stated the government "may seek to prove that the defendant has secreted assets or concealed a source of income (for example, a family member who provides the defendant with financial assistance)." *Id.* at 1532 (quoted by the government at DE 205:5). That passage answers a concealment problem—a defendant who understates resources he already has access to. *Fuentes* did not hold that a friend's unsolicited, still-undecided future generosity is the defendant's "financial resource"; the question was never presented, and the family assistance at issue there was ongoing and undisputed, not speculative.

*Fuentes* still describes an access-based inquiry—the practical ability to draw on funds. A gift no one has yet decided to send is the opposite of access. Mr. Geilenfeld cannot compel a gift and Heathman herself disclaimed any certainty that she will continue giving. (DE 205:17). Nothing in *Fuentes* treats a third party's undecided future generosity as a resource already within the defendant's reach.

Here, Mr. Geilenfeld has not concealed his resources—the deposits were documented in BOP records the government itself obtained and presented. (DE 205:9–10). The dispute is not whether the gifts were given, but whether a friend's undecided future choices are his resources at all. On that question, *Fuentes* says nothing.

### C. THE RECORD SHOWS A PERSONAL KINDNESS, NOT AN INCOME STREAM.

The deposits came from, at most, three sources over 14 to 16 months. Two-thirds were given by Heathman—the woman in whose basement Mr. Geilenfeld had lived and whose disabled daughter he had helped care for—one-third from a woman who had once worked at the mission in Haiti, and a single deposit from an unidentified third person. (DE 205:8–10). As defense counsel said without contradiction: "it is just really two friends who have continued to support him; and, primarily,

Ms. Heathman." (DE 205:9). There was no evidence of solicitation, no fundraising apparatus, and no entitlement.

The court's contrary inference rested on Mr. Geilenfeld's decades running a donation-funded residential mission. (DE 205:17–18). [redacted] Nor does that history demonstrate that an imprisoned 74-year-old serving a 210-year sentence for offenses against the children of that mission commands a personal donor base. Likewise, sentencing letters urging leniency do not sustain the government's burden. (DE 205:17). The record contains no promise—from any letter-writer—to fund a restitution obligation. Because the commissary gifts are not Mr. Geilenfeld's "projected earnings and other income," the only resource that could lawfully anchor a payment schedule is his theoretical UNICOR wages. The order must be vacated.

## II. THE COURT CONDITIONED CREDIT OF THE DEFENDANT'S ONLY CONTRARY EVIDENCE ON "UNEQUIVOCAL" CERTAINTY—A STANDARD § 3664(E) DOES NOT PERMIT.

The parties disputed only one factual question at the hearing—whether the gifts would continue. Mr. Geilenfeld relied on the donor's own statement. Heathman wrote that she "ha[d] no idea how long she's going to be able to continue" the deposits; that she is 76 years old with a 38-year-old disabled daughter; and that "[i]f I'm sending the money and it doesn't get to him, I just wouldn't send it." (DX 1; DE 205:10–11). The government offered nothing in response. The court nonetheless projected the gifts forward, explaining: "Even Defense Exhibit 1 does not unequivocally say that that person will not give sporadic payments." (DE 205:17). The court did not weigh that statement and find it outweighed by other evidence; it declined to credit it at all, and the sole reason it gave was that the statement did not speak "unequivocal[ly]." That is not a credibility judgment entitled to deference.

That is not how the preponderance standard works. Section 3664(e) resolves restitution disputes "by the preponderance of the evidence"—more likely than not. A standard that discounts evidence unless it

"unequivocally" forecloses the contrary proposition is a demand for certainty, and it is a demand no litigant can meet on the subject of another person's future conduct. No honest declarant can guarantee what she will do next year. The court therefore set the bar too high on the one issue that decided the restitution issue. Applying the wrong legal standard is not fact-finding entitled to deference; it is legal error, reviewed *de novo*, and a court "by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996).

*Fuentes* does not permit a different answer. Under *Fuentes*, the defendant bears the burden of persuasion on ability to pay, and a court unpersuaded by his evidence—or facing evidence in equipoise—may order full restitution. 107 F.3d at 1532. That framework presupposes weighing under the preponderance standard. A court that discounts the defendant's evidence unless it "unequivocally" forecloses the contrary proposition has not found the evidence wanting or in equipoise. Instead, the court has committed legal error by imposing a certainty threshold the statute does not contain.

Even under the correct standard, the finding cannot stand. Against Heathman's statement, her age, her dependent, and the conditional

purpose of her giving, the court weighed only history—a pattern of modest deposits—and sentencing letters that ask for mercy, not money. (DE 205:17). A pattern of past generosity is some evidence; but a preponderance finding that the generosity will persist for years, in amounts sufficient to fund $1,500 annually, in the face of the donor's uncontradicted statement of doubt and the order's own redirection of her money (*see* Part III.B), is clear error.

This Court has already refused to rest restitution on hope. The "mere possibility" that a defendant will unexpectedly acquire money "is not sufficient to support an order in an amount he is unlikely to be able to pay," because courts are not "in the lottery business." *Fuentes*, 107 F.3d at 1530 (quoting *United States v. Logar*, 975 F.2d 958, 964 (3d Cir. 1992)). A projection that a 76-year-old donor of modest means will fund another's debt for years, against her own stated doubt, rests on nothing firmer. The finding should be vacated, and the question redetermined under the standard the statute commands.

## III. NO FINDING CONNECTS THE RECORD TO $25,000 OR $1,500—AND THE ORDER'S OWN DESIGN DEFEATS ITS PREMISE.

### A. THE FIGURES ARE ESTIMATES WITHOUT FINDINGS.

The government told the district court that "restitution tends to be fuzzy math, at least as the 11th Circuit contemplates it." (DE 205:6–7). The court described the restitution task as "approximations and estimates," bounded by an evidentiary floor of "minimal indicia of reliability," and the resulting order as "the best that the [c]ourt can do." (DE 205:13–14). But on life expectancy—the variable that determines any payment window—the court made no finding at all. The court forthrightly stated, "I can't possibly know that with any certainty." (DE 205:14).

The numbers confirm the court's admission. Thirteen years (the government's actuarial figure) times $1,500 is $19,500. Thirteen years times $2,340 (the deposit average the court cited) is $30,420. Thirteen years times $3,000 (the government's projection) is $39,000. No math produces $25,000. (DE 205:14–15). Estimation is permissible in this Circuit, *Futrell*, 209 F.3d at 1291–92, but findings are still required, and

they must rest on evidence bearing the "minimal indicia of reliability" the court invoked (DE 205:14) and be sufficient for appellate review. *United States v. Hairston*, 888 F.2d 1349, 1352–53 (11th Cir. 1989) (requiring express findings of fact where the record does not provide an adequate basis for appellate review). *Futrell* itself shows what a sustainable estimate looks like—the figure this Court affirmed there was the end product of a witness's identified computation, traceable step by step through the record to the precise amount ordered. 209 F.3d at 1292 & n.3.

*Keelan*, the remaining case the district court invoked, does not counsel otherwise. *Keelan* was a mandatory-restitution case under 18 U.S.C. § 3663A that held that enticement under 18 U.S.C. § 2422(b) is a "crime of violence" under 18 U.S.C. § 16(b), so that the MVRA required restitution, and that the victim's documented mental-health-treatment costs were a recoverable, proximately caused loss. 786 F.3d at 871–73.

Neither premise exists here. [redacted], and the question here is not the size of a documented past loss but whether a third party's

future gifts are the defendant's resources at all. *Keelan* addressed neither ability to pay nor any projection of future income, and its standard of review—*de novo* for legality, clear error for findings, *id.* at 869—is the same framework Mr. Geilenfeld invokes. A total and a rate that are untethered to any computation, any payment window, and any found income stream are not findings; they are figures. This Court cannot review what the district court did not explain.

### B. THE ORDER CONTRADICTS ITSELF.

The projection on which the order rests is that Heathman's gifts will continue. The only record evidence of her intentions says the gifts are conditional: "If I'm sending the money and it doesn't get to him, I just wouldn't send it." (DE 205:11). The court then announced the order's design to the donors: "If the supporters wish to provide to Mr. Geilenfeld, they should know, just as Defense Exhibit 1 says, that a portion of their money is going to the people that he hurt." (DE 205:18).

Both propositions cannot be true. If the order works as designed—redirecting a portion of each gift—then, on this record, the giving stops, and the projected income stream vanishes. If the giving continues, it is only because the donor does not understand what the court told her. A

restitution projection cannot rest on the assumption that the order's own mechanism will fail to have its announced effect. A finding is clearly erroneous when the record permits only the contrary conclusion. This contradiction alone requires vacatur of the payment schedule.

### C. THE $1,500 MINIMUM CONSUMES THE SUBSISTENCE FUNDS THE COMMISSARY ACCOUNT EXISTS TO PROVIDE.

An inmate's commissary account is not discretionary money. Through this account, a federal prisoner buys hygiene items, supplemental food, and telephone and email access to the outside world. The $1,500 minimum consumes roughly two-thirds of the $2,280 to $2,400 in annual gifts that constitute the account's only funding. (DE 205:9–10). [redacted] The order therefore operates in one of two ways: if the gifts stop—as the record predicts once they are redirected—the minimum is unpayable and Mr. Geilenfeld faces the consequences of default, *see* 18 U.S.C. § 3613A; if the gifts continue, the order extracts subsistence support from a 76-year-old donor's generosity. Neither is a payment schedule "in consideration of" the defendant's resources under

§ 3664(f)(2); both are the abuse of discretion this Court identified in *Fuentes*—an obligation the defendant "is not likely to be able to pay." 107 F.3d at 1529. A court "must fashion a restitution order so that the defendant reasonably will be able to comply with the order." *Id.* at 1533. That constraint applies here whether the resources at issue bear on the amount, under 18 U.S.C. § 3663(a)(1)(B)(i)(II), or the schedule, under 18 U.S.C. § 3664(f)(2); both provisions confine the inquiry to resources that are the defendant's own, and speculative third-party generosity satisfies neither.

**CONCLUSION**

For the foregoing reasons, this Court should vacate the restitution order and remand with instructions to redetermine the amount and schedule of restitution based solely on Mr. Geilenfeld's own financial resources, needs, and earning ability under 18 U.S.C. § 3663(a)(1)(B)(i)(II), and his own projected earnings and other income under 18 U.S.C. § 3664(f)(2)—excluding, in both respects, voluntary third-party gifts he cannot compel—under the preponderance standard of § 3664(e). At a minimum, the Court should vacate and remand for

findings sufficient to permit meaningful appellate review of any amount and payment schedule imposed.

Respectfully submitted,

HECTOR A. DOPICO
Federal Public Defender

*Michael Caruso*
MICHAEL CARUSO
Assistant Federal Public Defender
Attorney for Appellant
150 West Flagler Street, Suite 1700
Miami, Florida 33130
(305) 533-4200

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains 4,940 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

*/s/ Michael Caruso*
MICHAEL CARUSO

**CERTIFICATE OF SERVICE**

I HEREBY certify that on this 27th day of July 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day via CM/ECF on George Doty, III, Assistant United States Attorney, 99 N.E. 4th Street, Miami, Florida 33132.

*/s/ Michael Caruso*
MICHAEL CARUSO